Peter J. Kappas, Petitioner, v. Commissioner.
Kappas v. Commissioner
Docket No. 66741.
United States Tax Court
T.C. Memo 1958-73; 1958 Tax Ct. Memo LEXIS 159; 17 T.C.M. (CCH) 353; T.C.M. (RIA) 58073; April 24, 1958
*159 Petitioner received liquidating assets of a corporation organized for the purpose of owning and wagering on race horses. Held: petitioner is liable as transferee for income tax deficiencies of the corporation in the amount of $9,520 plus interest. Andrew G. Mahas, Esq., John W. Wilke, Esq., and John X. Monahan, Esq., for the petitioner. John J. Larkin, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined that petitioner is liable in the amount of $9,600, plus statutory interest, as transferee of assets of Cincinnati Investment Holding Corporation for deficiencies of that corporation in income tax for the years ended September 30, 1947, September 30, 1948, and the period ending June 30, 1949. Respondent now concedes that the amount in controversy is $9,520, plus statutory interest, rather than $9,600. The sole issue is whether petitioner is liable as transferee for income tax deficiencies of Cincinnati Investment Holding Corporation, transferor, in the amount of $9,520, plus statutory interest. Findings of Fact Cincinnati Investment Holding Corporation (hereinafter referred to as CIHC) was organized *160 under the laws of the State of Delaware in 1946 for the purpose of owning and racing horses and wagering on horses at pari-mutuel race tracks. Prior to its formation the stockholders of CIHC had engaged as a partnership in the same business of owning race horses and wagering on race horses. During its existence CIHC engaged in this business. The total outstanding stock of CIHC was owned by the following individuals and in the following amounts: Number
Stockholders
of Shares
Jule Fink
36
Herbert J. Shapiro
22
Henry Fink
18
Peter J. Kappas
8
Maurice Cohen
8
Philip Rosenbaum
8
Total shares issued and outstanding
100 These stockholders were the original incorporators of CIHC. Jule Fink, the majority stockholder, was president of CIHC during its entire existence. The company relied heavily upon his guidance and advice in the management and operation of its business. At the first meeting of the board of directors of CIHC held in New York City on September 18, 1946, the treasurer of the company was authorized to open a bank account for CIHC with the Central Trust Company in Cincinnati, Ohio. Fink was authorized to issue checks on this account on behalf *161 of the corporation. He held this authority during the entire existence of CIHC. Jule Fink was authorized by several states, including the State of New York, to race horses within such states. The authority to race horses in the State of New York was controlled by the New York Jockey Club. This club issued licenses to race horses only to individuals. Shortly before May of 1949 Fink learned that the New York Jockey Club had decided not to renew his New York racing license. The refusal of the Jockey Club to renew the license was based upon objections by the club to Fink's association with CIHC, petitioner, and Herbert Shapiro. Fink did not wish to lose the racing license which he held individually. Subsequently, in view of the objections of the New York Jockey Club, Fink was advised by his attorneys that it would be best to dissolve CIHC, disassociate himself from the corporation, from petitioner, and from Shapiro, and attempt to intercede in the New York Jockey Club proceedings. In late May or early June of 1949 Fink called a meeting of a majority of the stockholders of CIHC. The meeting was held at Fink's home. Petitioner, who had not participated in the activities of CIHC since *162 1946, did not attend the meeting. At this meeting Fink discussed with the stockholders present his racing license renewal difficulties. The stockholders concluded that CIHC should be liquidated. Total assets of CIHC at the time of this meeting were determined to be approximately $120,000. The stockholders present at the meeting decided that petitioner and Shapiro, the two stockholders who were objected to by the New York Jockey Club, would be paid their pro rata share of CIHC assets in cash immediately. The remaining stockholders of CIHC were to receive their share of the assets of the corporation as and when those assets were liquidated. On July 1, 1949, CIHC issued its check drawn on the Central Trust Company account to Jule Fink in the amount of $36,000. The check represented the distributive shares of CIHC assets to be paid to petitioner and Shapiro. This check was deposited in the personal bank account of Jule Fink on the same date. On July 1, 1949, after the deposit of the $36,000 check, Fink's bank account reflected a total balance of $36,936.54. On July 2, 1949, Fink and his attorney met with petitioner in Cincinnati. On this date Fink issued a check on his personal bank *163 account in the amount of $9,520 to petitioner. This check represented petitioner's pro rata share of the assets of CIHC, less a minor adjustment for a personal debt owed by petitioner to Fink. Petitioner was told at this time that he was being paid his share of the corporate assets of CIHC. On July 5, 1949, Fink's personal bank account reflected a total balance of $27,170.29. Three checks had been subtracted from the previous balance of $36,936.54: the $9,520.00 check issued to petitioner and two smaller checks in the amounts of $191.25 and $55.00. On July 2, 1949, Fink also issued a check to Herbert J. Shapiro in the amount of $26,180. This check represented Shapiro's share of the assets of CIHC. On July 5, 1949, the board of directors of CIHC passed a formal resolution to dissolve the company. On July 7, 1949, a certificate of dissolution of CIHC was issued by the Secretary of State of the State of Delaware. The assets of CIHC which remained in the corporation after petitioner and Shapiro received checks in the amounts of $9,520 and $26,180, were not immediately liquidated. These assets consisted mainly of race horses which had to be sold and converted into cash for disposition *164 to the stockholders. Fink and the remaining stockholders agreed to receive their shares of the assets of CIHC after the race horses were converted into cash. Fink paid the expenses for the upkeep of the horses while they were being sold. Over a period of several years after the formal dissolution of CIHC all of the assets of that company were converted into cash and the cash distributed to Fink and the remaining stockholders in accordance with their shares of stock ownership. On January 18, 1956, pursuant to stipulation of the parties, this Court entered decisions to the effect that there were deficiencies in income tax of CIHC for the taxable year ended September 30, 1947 in the amount of $30,318.05; for the taxable year ended September 30, 1948, in the amount of $10,020.86; and for the taxable year ended September 30, 1949, in the amount of $34,244.36. These amounts were assessed by respondent on March 15, 1956. On May 22 and 23, 1956, respondent served first notices on CIHC to pay these income tax deficiencies. On July 2, 1956, respondent issued warrants of distraint to CIHC. A certificate of Assessments and Payments, Form 899, dated August 14, 1957, reflects that no part of *165 the deficiencies in income tax of CIHC, plus statutory interest, has been paid as of that date. Opinion At the conclusion of respondent's case petitioner moved for judgment on the ground that respondent had failed to prove as a matter of law that petitioner was liable as a transferee of assets of CIHC. The Court withheld decision on that motion. Since this motion goes to the merits of the case it will be considered in connection with the decision on the issue presented. The issue for decision is whether petitioner is liable as transferee to the extent of $9,520, plus statutory interest, for unpaid taxes of CIHC, transferor. Under the facts here presented, respondent bears the burden of proving that petitioner received assets of CIHC in this amount and that the transfer of such assets to petitioner was one of a series of distributions in complete liquidation which left CIHC insolvent and without means to pay its tax liability. , vacated and remanded for modification, (C.A. 1, 1956) . To prove that petitioner was a transferee of assets of CIHC respondent relied primarily upon the testimony of Jule Fink, *166 president and majority stockholder of CIHC during its existence. Fink testified that he held a New York horse racing license from the New York Jockey Club and that such licenses were issued only to individuals. He further testified that in the spring of 1949 he learned that the Jockey Club had decided not to renew his racing license because of his association with CIHC, petitioner and Shapiro. Since the Jockey Club controlled the issuance of horse racing licenses in the State of New York, Fink was advised by his attorneys to dissolve CIHC and to intercede in the Jockey Club proceedings in an effort to secure a renewal of the license. In addition, Fink testified that he immediately called a meeting of the majority of the stockholders of CIHC to discuss plans for liquidating the company. At this meeting the stockholders agreed that the corporation should be liquidated and that petitioner and Shapiro were to be paid their pro rata shares of the corporate assets in cash immediately. Fink testified that he wished to adopt this procedure so as to disassociate himself completely from petitioner and Shapiro as soon as possible. Fink's further testimony was to the effect that CIHC issued a *167 check to him in the amount of $36,000 which he deposited in his personal bank account and that this check represented the distributive shares of corporate assets to be paid over to petitioner and Shapiro. Respondent introduced bank records to show that the check was deposited in Fink's account on the date indicated. Fink further testified that on July 2, 1949, he issued his personal check to petitioner in the amount of $9,520, and that this check represented payment to petitioner of his pro rata share of the assets of CIHC. Fink also testified that he issued a check to Shapiro which represented Shapiro's share of the corporate assets. Respondent then offered in evidence a resolution to dissolve CIHC passed by the board of directors of the company on July 5, 1949, and certificate of dissolution of CIHC issued by the Secretary of State of the State of Delaware on July 7, 1949. Against this evidence petitioner offered only his own self-serving testimony to the effect that he had sold Fink his interest in CIHC on July 2, 1949. Petitioner testified that Fink did not say that the $9,520 check issued to him was his share of the liquidating assets of the company. Since it is uncorroborated, *168 however, petitioner's testimony in this regard in not persuasive. Petitioner was not present at the stockholders' meeting held for the purpose of discussing dissolution of CIHC and he offered no evidence to rebut Fink's testimony that liquidation of the company was agreed upon in that meeting. Moreover, petitioner did not contradict Fink's testimony that he wished to dissolve CIHC and to disassociate himself from the company and from petitioner and Shapiro in order to retain his horse racing license. When the reason for Fink's desire to dissolve CIHC is considered together with the affirmative steps taken to liquidate the corporation, it is apparent that the payment to petitioner on July 2, 1949 was liquidating in character and represented petitioner's share of the assets of the company, even though no resolution of liquidation or dissolution had been adopted by the stockholders by that date. See A formal resolution dissolving the company was passed three days after the payment to petitioner, and on July 7, 1949, a certificate of dissolution was issued to CIHC by the State of Delaware. Clearly the entire transaction from the time of the stockholders' *169 meeting called by Fink to the issuance of the certificate of dissolution was directed toward the winding up of the business affairs of CIHC and the distribution of its assets to the stockholders. Nor is it significant that the payment to petitioner was in the form of a check drawn on Fink's personal bank account. The evidence shows that Fink had received a check in the amount of $36,000 from CIHC which he deposited in his personal account on July 1, 1949. Fink testified that this check was a distribution of assets of CIHC to petitioner and Shapiro. Since Fink was the majority stockholder and president of CIHC and had authority to draw checks on CIHC's bank account it would seem immaterial as far as petitioner is concerned whether the corporation paid him directly or whether the payment was received through Fink. Since the funds received by petitioner are traceable to the corporation, the evidence indicates that Fink was merely the conduit through which the corporate funds passed on their way to petitioner. Under these circumstances, we hold that on July 2, 1949, petitioner received a liquidating distribution of assets of CIHC. Respondent has *170 also proved that the distribution to petitioner on July 2, 1949, was one of a series of distributions in liquidation of CIHC which resulted in the insolvency of that company. Jule Fink testified unequivocally that the assets remaining in CIHC after the distribution to petitioner and Shapiro were made were eventually distributed to himself and the remaining stockholders. He testified that most of these assets consisted of race horses which could not readily be converted to cash. He further testified, however, that the remaining stockholders agreed to defer receipt of their share of CIHC until after the race horses were sold. Fink himself bore the expense of keeping up the horses until they were converted into cash. Petitioner has offered no evidence to rebut Fink's testimony in this regard. It is true, of course, that respondent has not introduced records to show the ultimate disposition of all of the corporate assets of CIHC to its remaining stockholders. In addition, a bank statement of CIHC introduced in evidence by respondent shows that the corporation had a cash balance of $481.29 in its account with the Central Trust Company on February 28, 1950. However, Fink testified that *171 all of the assets of CIHC were eventually distributed to the stockholders in proportion to their shares of stock ownership, this testimony is uncontradicted, and there is no reason to disbelieve it. We therefore conclude, on the basis of all evidence presented, that respondent has carried his burden of proving that the transfer of assets of CIHC to petitioner on July 2, 1949, was one of a series of distributions in complete liquidation of that company. The liability of CIHC for income tax deficiencies was determined by this Court on January 18, 1956. The amounts so determined were assessed by respondent on March 15, 1956. Thereafter respondent served first notices on CIHC to pay such deficiencies and issued a warrant of distraint against such corporation. A certificate of assessments and payments, Form 899, introduced in evidence by respondent, shows that none of the income tax liability of CIHC as determined by this Court's decision has been paid. It is therefore clear that the series of distributions of the assets of CIHC left the company without funds to pay its tax liability. One further problem remains. The liquidating distribution of $9,520 was paid from Fink's personal account *172 after the deposit in that account of the $36,000 check from CIHC. Respondent must show that the funds transferred to petitioner came directly from the check issued by CIHC and that no part of Fink's personal funds were used in the payment to petitioner. . We think that respondent has carried this burden. Fink testified that the $36,000 check represented liquidating assets of CIHC and that the $9,520 check represented petitioner's share of the $36,000 worth of liquidating assets. Fink did not intend to commingle the $36,000 with his personal funds, but intended to pay out the $36,000 immediately. Furthermore, the $36,000 check was deposited in Fink's personal account on July 1, 1949, and petitioner received the $9,520 on July 2, 1949. From this evidence, it seems clear that liquidating assets are traceable from CIHC to petitioner through Fink's bank account, that Fink did not intend to commingle the $36,000 with his personal funds, and that Fink used his personal account to effect payment only as a matter of convenience. We hold that no part of the $9,520 received by petitioner represented personal funds of Fink and not liquidating *173 assets of CIHC. Decision will be entered under Rule 50.